294 N.J. Super. 400 (1996)
683 A.2d 591
IN THE MATTER OF THE ADOPTION OF AN ADULT BY V.A.
Superior Court of New Jersey, Chancery Division Probate Part Hunterdon County.
Decided April 1, 1996.
Georgann Scibilia, for plaintiff.
*401 HERR, J.S.C.
This is a case of first impression in New Jersey regarding whether notice to the natural father is required in an adult adoption. V.A. filed a complaint seeking to adopt M.M., the adult child of his wife, N.A., without giving notice to the natural father, D.D. The reasons for the court's requiring notice to the natural father in spite of the silence of the statute are set forth herein.
N.J.S.A. 2A:22-1 outlines the standard for adult adoptions in New Jersey and states:
The superior court shall allow an unmarried person of full age, a husband with his wife's consent, a wife with her husband's consent or a husband and wife jointly to adopt an adult person and may change the name of the adult, if the court is satisfied that the adopting parent or parents are of good moral character and of reputable standing in their community and that the adoption will be to the advantage and benefit of the person to be adopted.
N.J.S.A. 2A:22-2 outlines additional requirements for granting the adoption and states:
Such adoption shall not be granted, unless the adopting parent or parents are at least 10 years older than the person to be adopted and the latter has, in writing, acknowledged by him as deeds are required to be acknowledged, requested the adoption and, if desired, the change of name. The court, upon being satisfied that the best interests of the person to be adopted would be promoted by granting the adoption, may waive any and all of the above requirements. Every such waiver shall be recited in any judgment of adoption thereafter entered.
Applying these requirements to the case at bar, the statute requires that 1) N.A. consent to V.A.'s adoption of M.M.; 2) V.A. be of good moral character and of reputable standing in the community; 3) the adoption be to the advantage and benefit of M.M.; 4) V.A. be at least 10 years older than M.M.; 5) M.M. request the adoption; and 6) the best interests of M.M. be promoted by granting the adoption.
The complaint asserting that each of these requirements has been met was uncontroverted and proven to the court's satisfaction. Nonetheless, at the initial hearing, I denied the application for plaintiff's failure to give notice of the termination of parental rights to M.M.'s natural father, D.D. Notice is not a specifically stated condition of the Adult Adoption Statute in New Jersey, *402 N.J.S.A. 2A:22-1 through -3, but I determined notice was required by the Due Process Clause of the Fifth and Fourteenth Amendments of the Federal Constitution and Article 1, ¶ 1 of the New Jersey Constitution.
The notice requirement of the Due Process Clause is well documented. In Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950), the United States Supreme Court stated:
[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause, but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.
Similarly, in Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1977), the United States Supreme Court stated:
[t]his Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. Wolff v McDonnell, 418 US 539, 557-558, 94 SCt 2963 [2975-76] 41 LEd 2d 935, 71 Ohio Ops2d 336 (1974). See, e.g., Phillips v Commissioner, 283 US 589, 596-597, 51 SCt 608 [611-12] 75 LEd 1289 (1931). See also Dent v West Virginia, 129 US 114, 124-125, 9 SCt 231 [234] 32 LEd 623 (1889). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." Joint Anti-Fascist Comm v McGrath, 341 US 123, 168, 71 SCt 624 [646-47] 95 LEd 817 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v Manzo, 380 US 545, 552, 85 SCt 1187 [1191], 14 LEd 2d 62 (1965). See Grannis v Ordean, 234 US 385, 394, 34 SCt 779 [783], 58 LEd 1363 (1914).
The case most closely resembling the situation presented here is Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In Armstrong, petitioner R. Wright Armstrong, Jr. challenged a Texas adoption law that waived notice to the natural parent of the hearing on adoption for a minor child when the natural parent failed to contribute to the financial support of the child during the two years prior to the adoption request. The Court held that Armstrong was entitled to notice of the pending adoption proceedings and failure to give him notice violated the most rudimentary demands of due process of law. Armstrong, *403 supra, 380 U.S. at 549, 85 S.Ct. at 1190. The Court went on to state:
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v Meyer, 311 US 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]; Grannis v Ordean, 234 US 385 [34 S.Ct. 779, 58 L.Ed. 1363]; Priest v Las Vegas, 232 US 604 [34 S.Ct. 443, 58 L.Ed. 751]; Roller v Holly, 176 US 398 [20 S.Ct. 410, 44 L.Ed. 520] ..." Id, at 314 [70 SCt at 657], 94 LEd at 873.... [A]s to the basic requirement of notice itself there can be no doubt, where, as here, the result of the judicial proceeding was permanently to deprive a legitimate parent of all that parenthood implies. Cf May v Anderson, 345 US 528, 533, 73 SCt 840 [843], 97 LEd 1221, 1226.
[Armstrong at 550, 85 S.Ct. at 1190-91.]
Several New Jersey cases also define the extent of the due process clause. In Nicoletta v. No. Jersey District Water Supply Commission, 77 N.J. 145, 162, 390 A.2d 90 (1978), the Court held "[t]he first prerequisite then of due process is fair notice, Avant v. Clifford, 67 N.J. 496, 525 [341 A.2d 629] (1975), so that a response can be prepared and the respondent fairly heard." In McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 558-59, 626 A.2d 425 (1993), the Court stated:
[a]t a minimum, due process requires notice and an opportunity to be heard "appropriate to the nature of the case." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950); Kaprow v. Board of Educ., 131 N.J. 572, 583, 622 A.2d 237 (1993). To comport with due process, a judicial hearing requires notice defining the issues and an adequate opportunity to prepare and respond. Nicoletta v. North Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162, 390 A.2d 90 (1978).
In Sorentino v. Family and Children's Soc. of Elizabeth, 74 N.J. 313, 326, 378 A.2d 18 (1977), the Supreme Court reviewed a petition to block a child adoption by the natural parents which was filed in response to a proceeding to terminate parental rights. Although the natural parents had effectively abandoned the child, the Court found that due process required that the natural parents receive notice that the proceeding would address not only the termination issue but also the adoption issue. The Court ruled:
[w]hile we share the parties' anxiety to terminate this case, there has been no notice to plaintiffs, except for the one page "supplemental petition" referred to, *404 that final adoption was a live issue in the case. A decent respect for the rights of everyone involved in this emotion-laden situation calls for due process to be recognized by a remand to the Chancery Division to entertain the Does' application for adoption, consistent with this opinion.
In In re Estate of Neuwirth, 155 N.J. Super. 410, 419, 382 A.2d 972 (Cty.Ct. 1978), the Court reviewed a child adoption conducted out of state and without notice to the natural father:
[t]here is no doubt that due process requires that a natural parent be given notice and opportunity to be heard before being deprived of parental rights through an adoption proceeding. Armstrong v. Manzo, 380 U.S. 545, 549-552, 85 S.Ct. 1187 [1190-91], 14 L.Ed.2d 62 (1965); Fielding v. Highsmith, 152 Fla. 837, 839, 13 So.2d 208, 209 (Sup.Ct. 1943) (en banc).
In order for the Due Process Clause to attach, however, a life, liberty or property interest must be in jeopardy. Plaintiff V.A. argues that in an adult adoption, such as the one at hand, the natural father has no life, liberty or property interest in M.M. He argues that the natural father voluntarily surrendered all such interest in M.M. by his failure to participate in regular and expected parental functions, defined in N.J.S.A. 9:3-46(a)(2) as "the care and support of the child." However, the child adoption statute does not support V.A.'s position. N.J.S.A. 9:3-45 states:
a. In an adoption proceeding pursuant to P.L. 1977, c. 367 (C. 9:3-37 et seq.), notice of the complaint may not be waived and a notice of hearing shall be served in accordance with the Rules of Court on each parent of the child to be adopted. ... b. Notice pursuant to subsection a. of this section shall not be served on a parent:
(1) Who has executed a valid surrender to an approved agency ...;
(2) Whose parental rights have been terminated in a separate judicial proceeding by court order;
(3) Who has, prior to the placement of the child for adoption, received notice of the intention to place the child, ... (and) failed to file written objections or denied paternity or maternity of the child ...;
(4) Who has given the child for adoption to the adopting parent, and the Superior Court, Chancery Division, Family Part, after a hearing at which the surrendering parent was heard as to the voluntariness of the surrender, has determined that the surrender was voluntary and proper; or
(5) Whose child has been made available for adoption in a foreign state or country if the United States Immigration and Naturalization Service has determined that the child has been approved for adoptive placement.... (emphasis added).
*405 Thus, as in Sorentino, supra, the New Jersey child adoption statute does not permit waiver of notice to the natural parent, even when that parent fails to perform the regular and expected parental functions of care and support of the child. Instead, the statute allows the court, after a review on the merits and notice to the natural parent, to grant the adoption despite the objection of the natural parent when the natural parent fails to perform those duties. By requiring notice, the statute allows the courts to act in the best interest of the child to be adopted while still protecting the due process rights of the natural parent. The only situation in which the statute waives notice is when the natural parent has already surrendered parental rights. N.J.S.A. 9:3-46(a).
While the notice requirements contained in N.J.S.A. 9:3-45 for the adoption of minor children have never been interpreted to apply to adult adoptions, case law is replete with language that reflects the high regard for the parent-child relationship which no one can reasonably suggest terminates when a child becomes an adult under the law. The United State Supreme Court has held that parents have a constitutionally protected right to enjoy a relationship with their children. In Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972), the Court indicated:
[t]he rights to conceive and to raise one's children have been deemed "essential," Meyer v Nebraska, 262 US 390, 399, 43 SCt 625 [626], 67 LEd 1042, 1045, 29 ALR 1446 (1923), "basic civil rights of man," Skinner v Oklahoma, 316 US 535, 541, 62 SCt 1110 [1113], 86 LEd 1655, 1660 (1942), and "[r]ights far more precious ... than property rights," May v Anderson, 345 US 528, 533, 73 SCt 840 [843], 97 LEd 1221, 1226 (1953). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v Massachusetts, 321 US 158, 166, 64 SCt 438 [442], 88 LEd 645, 652 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v Nebraska, supra, at 399 [43 S.Ct. at 626], 67 LEd at 1045, the Equal Protection Clause of the Fourteenth Amendment, Skinner v Oklahoma, supra, 541, [62 S.Ct. at 1113], 86 LEd at 1660, and the Ninth Amendment, Griswold v Connecticut, 381 US 479, 496, 85 SCt 1678 [1688], 14 LEd 2d 510, 522 (1965) (Goldberg, J., concurring).
*406 This decision was cited as controlling in Matter of Adoption of Child by D.M.H., 135 N.J. 473, 480-81, 641 A.2d 235 (1994), wherein the Court stated:
[t]he right of a biological parent to enjoy a relationship with his or her child is fundamental and constitutionally protected. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); In re Adoption of Children by L.A.S., 134 N.J. 127, 631 A.2d 928 (1993). As this court stated in New Jersey Division of Youth & Family Services v. A.W., 103 N.J. 591, 512 A.2d 438 (1986):
[W]e emphasize the inviolability of the family unit, noting that "[t]he rights to conceive and to raise one's children have been deemed `essential,' * * * `basic civil rights of man,' * * * and `[r]ights far more precious * * * than property rights'...." The interests of parents in this relationship have thus been deemed fundamental and are constitutionally protected.
[Id. at 599, 512 A.2d 438 (quoting Stanley, supra, 405 U.S. at 651, 92 S.Ct. at 1212, 31 L.Ed.2d at 558).]
Applying these standards to the case at bar, I am satisfied that due process requires that the natural father receive notice of these adoption proceedings which will terminate his parental rights but yet permit M.M. to inherit from him. N.J.S.A. 2A:22-3. It is fundamentally unfair for a natural parent to live under the impression that a parent-child relationship exists with an adult child when in fact that relationship has been ended by a court proceeding about which the natural parent has been given no notice. See Adoption of Adult by G.V.C., 243 N.J. Super. 651, 653, 581 A.2d 123 (Ch.Div. 1990) and In re Adoption of P., 193 N.J. Super. 33, 37, 471 A.2d 1220 (L.Div. 1983) (held that in construing the statute, the court cannot ignore the public interest and the effect the adoption would have on third parties). Notice will give the natural father an opportunity to be heard on whether the statutory standards are satisfied. If plaintiff's allegations concerning the natural father are true and if the standards are satisfied, it is likely he will not have a reasonable basis for opposing this adoption. In the event the adoption is approved, he will know that his parental rights have been terminated. The application for adoption is denied without prejudice, to allow V.A. to provide proof of notice to D.D.